### Caddell v. The Eagle Coal Company.

(Decided June 21, 1911.)

Appeal from Pulaski Circuit Court.

Title—Action to Quiet.—In an action to quiet title, evidence examined and held to support the finding of the chancellor.

DENTON & FLEPPEN for appellant.

O. H. WADDLE & SONS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, The Eagle Coal Company, brought this action against M. C. Caddell and his tenant, Doc Bryan, to restrain them from trespassing upon a certain tract of land in Pulaski County, Kentucky, and to quiet its title thereto. Appellant Caddell denied appellee's title, and pleaded title in himself, both by record and adverse possession. Upon submission of the case the chancellor granted appellee the relief sought, and Caddell appeals.

The evidence shows that appellee has title to the land in controversy by a regular chain of conveyances from Caldwell Stewart's heirs, who claimed under the Caldwell Stewart patent, which was issued in May, 1851. On the other hand, appellant claims title under two patents surveyed in 1866 and issued in 1867. It is manifest, then, that, so far as the record title is concerned, that of appellee is the superior.

Inasmuch, however, as the Caldwell Stewart patent refers to certain exclusions, it is insisted that the evidence for appellee is not sufficient to show that the land in controversy is not within the exclusions. Upon this question, W. L. Carter, appellee's manager and who is also a practical surveyor, testified that he was well acquainted with the boundary of the Stewart patent, and also with the Caddell tracts, set up in appellant's answer. He further testified that he had made a thorough search of the records in the Pulaski County clerk's office, and also of the surveyors' books of that county, for the purpose of ascertaining the exclusions referred to in the Stewart patent; that the two tracts of land described in appellant's answer, in so far as they lay in Pulaski County, were included within the Caldwell Stewart patent, and that neither of said tracts was included within any of the exclusions referred to in that patent. It was also shown by Carter's testimony that the Stewart patent called for 9,280 acres of previously patented and surveyed land, while the deed to The Eagle Coal Company called for exclusions amounting to only 4,200 acres, but that this was due to the fact that a great many of the older surveys had been purchased by appellee's grantor and were not, therefore, cited in the deeds as exclusions.

While it is true that the burden of proof was upon appellee to show that the land in controversy was not included within the exclusions called for in the Stewart patent, we think the evidence upon this point was sufficient, under the rule laid down in Steele v. Bryant, 132

Ky., 569, to make out a prima facie case and to shift the burden.

The evidence shows that appellee has been in possession of the land in controversy since 1895. During that time it has had several tenants residing thereon and has been engaged in mining coal upon the land. Appellant acquired title from the Higginbothams in 1896. He has never been in possession of any of the land; nor does it appear that the Higginbothams, who procured the patents in 1867, were ever in possession of it. That being practically admitted, appellant has attempted to establish title by adverse possession by showing that the widow Barnett and her children occupied the tracts in controversy from 1848 to 1866, when they sold out to the Higginbothams. A careful reading of the evidence upon this point shows that the Barnetts had cleared some twelve acres of land on Bush Creek, and they, together with a man by the name of Cox, were claiming to certain ridges, and that Cox afterwards sold out to the Barnetts. In what manner the sale was made, does not appear. Nor does it appear that either the Barnetts or Cox claimed to a well-defined or marked boundary. Furthermore, the evidence is by no means satisfactory, that the land actually cleared by them was located within the Stewart patent or within the Higginbotham patents. While the witnesses so claimed in their direct testimony, yet on cross-examination it develops that their testimony is very uncertain. When it comes to the conveyance by the widow Barnett and her heirs to the Higginbothams, we find that the only evidence upon this point is the statement made by the son-in-law and administrator of Andrew Higginbotham, that there came into his possession a certain paper, which, so far as he could recollect, read: ''We, the heirs and widow of John Barnett, sign over all interest and claim of possession we have on Brush Creek for $25.00.'' This contract, he thinks, was dated about the year 1865. He did not remember whether the widow and all the heirs had signed the contract or not. While two of the Barnett heirs were called upon to give their depositions, neither one testified to the fact that he signed such a paper, or that such a paper ever existed. That being true, it may be doubted if the evidence is sufficient to establish the existence and purport of the paper referred to; but, even if it be sufficient, we conclude that the writing is of too vague, indefinite and uncertain character to convey the title to the land.

Judgment affirmed .