## Tennis Coal Company v. Sackett.

(Decided December 15, 1916.)

### Appeal from Harlan Circuit Court.

1. Trial—Peremptory Instruction—How Predicated.—A peremptory instruction is always to be predicated upon the fact, that all the evidence tends to support the contention of the party in whose interest it is given, where there is an issue upon the pleadings.
2. Public Lands—Effect of Senior Grant.—The senior grant vests the legal title to the lands in the holder of such grant, and he is thereby the owner of the paramount title, unless it is lost to him by adverse possession of another, or he has renounced the title.
3. Public Lands—Possession—Constructive Possession.—The law vests the possession of lands in the holder of the paramount title,

and he is always in the constructive possession of them, in the absence of an actual possession by another.

4.  Adverse Possession—Possession With Color of Title.—A possession of lands, which will ripen into a title for one, who has no title or a mere color of title, must be actual, in fact, and have for its basis the existence of physical facts, which openly evince a purpose to hold dominion over the land, in hostility to the title of the real owner.

5.  Adverse Possession—Nature and Requisites.—There can be no adverse possession of a tract of land without an actual possession of some part of it, with the intention to hold and possess it all.

6.  Adverse Possession—Extent of Possession.—Where one enters upon lands, to which he does not own the real title, but claiming under a deed, patent or other instrument of writing, which gives him a color of title, he is in the actual possession of the portion of the land, which he occupies, and in the actual possession, by construction, of the remainder of the tract to the boundaries of his instrument, if it is not in the possession of another, but his actual possession, by construction, does not extend beyond the boundaries of the instrument under which he claims.

7.  Adverse Possession—Actual Possession.—One who occupies a tract of land, to which he has title, and acquires a deed or patent to an adjoining tract, which amounts to only a color of title, the real title and constructive possession of the tract being in another, he does not by the obtention of such color of title, become in the possession of the adjoining tract, and will not have adverse possession of it without taking physical possession of it.

8.  Adverse Possession—Adjoining Tracts — Purchase — Waiver. — If one occupies a tract of land, of which he is the real title holder, and acquires adjoining tracts to it by deeds or patents, which vest in him the title to the adjoining tracts, the law waives the necessity of an entry upon the adjoining tract or tracts, and he becomes in the actual possession of them by operation of law.

9.  Adverse Possession—Judgment Quieting Title.—A judgment of a court having jurisdiction of the parties and the subject matter, by which the title to a tract of land is quieted and the ownership of it declared to be in one of the parties, and the other enjoined from using or claiming to be the owner of it, although the one enjoined may claim to be in possession, it extinguishes any rights he may claim to the land, and in order to create title to it by adverse possession, he must hold it adversely for fifteen years after the judgment, and during such time his possession is not such as to render void, under the statute against champerty, a sale and conveyance made by the owner of the land.

10.  Adverse Possession—Section 2358a Kentucky Statutes.—The provisions of section 2358a, Kentucky Statutes, do not relate to purchases, leases and encumbrances of real estate, where the attempted sales, leases and encumbrances are made and put upon the lands by persons, who do not and never have had any right, title or interest in the lands.

11. Lis Pendens—Notice.—The lis pendens notice provided for by section 2358a, Kentucky Statutes, applies to judgments and proceedings in the Federal Courts, where the lands are situated in the State of Kentucky, the same as where the judgments and proceedings are in the courts of the state.

12. Adverse Possession—Mines and Minerals.—Under the provisions of section 2366a, Kentucky Statutes, where the claimant in possession sells the minerals in the lands to another, the possession of the one selling and those who claim under him, enures to the benefit of the purchasers of the minerals.

13. Adverse Possession—Mines and Minerals—Quieting Title.—Under the provisions of section 2366a, Kentucky Statutes, if any one in the adverse possession of lands, to which he has no title, and before his possession ripens into a title by the expiration of the statutory period necessary for that purpose, he sells the minerals in the lands to another, if he or any one claiming under him remains in the possession until the possession ripens into title, the title of the purchaser of the minerals becomes valid, but if the occupant of the lands abandons his possession, or is evicted by the paramount title holder, or he is enjoined from holding or claiming the land adversely, and the land adjudged to be owned by another, as in a suit for a quia timet, before his possession has ripened into title, then the title of the purchaser of the minerals must fail.

BAILEY P. WOOTTEN, JESSE MORGAN, JAMES H. JEFFRIES, HAGER & STEWART and NEAL & STRICKLING for appellant.

CLEON K. CALVERT for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming upon the original appeal and reversing upon cross-appeal.

Based upon surveys made on the 24th, 25th, 26th, 27th, 28th and 30th days of June, and 1st, 2nd, 3rd and 4th days of July, 1873, a patent was granted to C. O. Lockard, on the 4th day of November, 1873, for 78,262 acres of land, in what was then Harlan county, but now in Harlan and Leslie counties. That patent, by its terms, excluded from the grant 32,147 acres of land, which had been previously patented, the names of the patentees of which were not given, and in addition thereto 5,675 acres of land, which was embraced by prior entries. The prior entries had been made by twenty-six different persons, whose names and the number of acres included in their entries, respectively, were specifically set out. This left included within the grant 40,400 acres of land, which until then had not been appropriated. The boundary of

the lands, embraced within the patent, was described, generally, as lying upon the waters of Beech Fork— Fork, Bad Creek, Coon Creek and Wolfe Creek, tributaries of the Middle Fork of the Kentucky river—and bounded on the south and southeast by Pine mountain; north and northeast by the lines of Perry and Letcher counties; on the west and northwest by the line of Clay county, and on the southwest by Boyd Dickerson's 100,000-acre survey; and in addition to this general description, the metes and bounds of the granted land were set out specifically by courses and distances.

C. O. Lockard died, testate, about the year 1887, a citizen of the state of Ohio, but on November 20th, 1905, his last will and testament was duly probated, as a will of real estate, in the Leslie county court.

Thereafter, on the 11th day of May, 1907, the devisees under the will of C. O. Lockard, deceased, conveyed a very large portion of the lands, embraced in the grant to C. O. Lockard, to the appellee, F. M. Sackett. In the deed to Sackett, there was excluded from the operation of that deed 24,000 acres of lands, which were held under patents anterior to the Lockard patent, and about 800 acres of land, which had been previously conveyed to the Burt & Brabb Lumber Company.

During the year 1903, the appellant, Tennis Coal Company, which is a corporation and organized under the laws of the state of West Virginia, purchased from various persons, who were claimants of different portions of the lands embraced in the deed of conveyance from the devisees of C. O. Lockard to appellee, F. M. Sackett, the coals, minerals, gases, oils, stone, salt waters, salt minerals, iron ore, fire and potters' clay, and other mineral products, and many privileges and easements, usually incident to the sale of minerals, as separated from the ownership of the surface of the land, which were in and under the lands claimed by such parties, from whom the purchases were made, and obtained deeds of conveyance therefor.

On September 24th, 1912, the appellee, F. M. Sackett, instituted this suit in the Harlan circuit court against the appellant, Tennis Coal Co. In the petition, he alleged his ownership of the various tracts of land and all of the coals, minerals, etc., above mentioned, which were in and under the surface of the lands; and that in and under eleven distinct portions of the lands, which were de-

scribed by metes and bounds, the Tennis Coal Co. was claiming to be the owner of the minerals and products above mentioned, and had without right and against his consent entered upon such portions, as were described in the petition, and was detaining the possession of such portions from him without right and against his consent, and prayed the court to adjudge that he was the owner of the lands and the various substances underneath the surface of them, and to give him the possession of same.

The appellant, by answer, set out and described thirteen portions of the lands, which were described in the petition, and in such thirteen portions, it claimed to be the owner and in the possession of the various coals, minerals, etc., mentioned in the petition, and as to these portions, it denied the ownership and right of possession of appellee of the lands or any of the substances under the surface of the lands, or any of the easements or privileges claimed and sued for, and further claimed, that it, and those under whom it claimed ownership, had been in the adverse possession of the lands and the substances therein for more than fifteen years before the filing of the petition; that the lands were covered by an older and superior title to that of the appellee; and that at the time the lands were conveyed to appellee by the devisees of Lockard, that the lands were then in the adverse possession of it and those under whom it claimed and for that reason the deed of conveyance, under which the appellee claims ownership, was champertous and void.

The answer was made a counter-claim, with a prayer that the petition, be dismissed, and that its title to the coals, minerals, etc., in the thirteen portions of the land claimed by it be quieted. An amended answer was, also, filed. The affirmative averments of the answers were denied by replies.

At the close of the testimony offered by the appellee, who, as said, was the plaintiff below, the appellant moved the court to peremptorily instruct the jury to find a verdict in its behalf as to the coals, minerals, etc., in all the tracts of land in controversy, and at the close of all the evidence, renewed the motion, but it was overruled in both instances.

At the close of all the evidence, the appellee moved the court to direct a verdict for him as to all the coals, minerals, etc., sued for, in and under all the tracts of land in controversy. The court sustained the motion in part

and overruled it in part. It directed the jury to find for appellee all the coals, minerals, etc., mentioned in the petition, in and under the tracts of land described as the Lewis Turner, James Miniard, and Wm. Miniard, second tract, respectively; and in and under all that portion of the tract known as the John Huff tract, which lies outside of the exterior lines of the David Turner fifty-acre patent, No. 64345; and in and under that portion of the tract described as the Wm. Miniard first tract, which is not embraced by the patents to Wm. Miniard, which are No. 58985, No. 58984 and No. 64344, respectively; and in and under that portion of the tract described as the John L. Turner tract, which is not embraced by the patent granted to Ballard Begley, No. 622702, and the patent to Israel Napier, No. 67056.

The ownership of the coals, minerals and privileges described in the petition, in and under all the other portions of the lands in controversy, not included by the portions of the lands referred to and designated in the peremptory instruction, were submitted to the jury under instructions, which, in substance, directed it, that if it believed from the evidence that the lands in controversy were not embraced within the excluded portions in the patent to C. O. Lockard, nor in the excluded portions in the deed from Lockard's devisees to appellee, to find for appellee all the coals, minerals, privileges, etc., mentioned in the petition, in and under so much of the lands as are not embraced in the lands excluded from the operation of the patent and deed, unless it should believe from the evidence that all, or some portions, of the lands had been in the adverse possession of the appellants or those under whom it claims title, for fifteen years, at one time, before the institution of the action, or that all or some portions of the lands in controversy were in the adverse possession of the appellant and those under whom it claimed title at the time of the purchase by and conveyance to the appellee, and that all or such portions of the lands as it should find had been held adversely by appellant and those under whom it claimed for as much as fifteen years, at one time, before the institution of the action, or was in the adverse possession of the appellant and those under whom it claimed at the time of the purchase by and conveyance to appellee, it should find for' appellant. The jury was, in substance, further instructed, that where minerals in lands are sold and con-

veyed, and the person, selling the same, or anyone claiming under him, remains in possession of the surface of the land, the person so holding the possession, also, holds the actual possession of the minerals for the benefit of the person to whom they had been conveyed.

Another instruction directed the jury, that if the patents No. 58984, No. 58985 and No. 64344, which had been granted to Wm. Miniard, and containing fifty, one hundred, and seventy-five acres, respectively, lie adjoining each other and form one connected boundary of land, the entry of Wm. Miniard upon the lands embraced in one of these patents and clearing and fencing a field thereon was, in contemplation of law, an entry and taking possession of all the lands, which are embraced in all three of the grants.

The appellant and appellee, each, objected to the instructions given by the court, and their objections being overruled, saved exceptions, and each of them offered other instructions, which were denied by the court and to which reference will hereafter be made.

In accordance with the directions of the peremptory instruction, the jury found for appellee, as therein directed, and under the other instructions, found for appellee, the coals, minerals, etc., in the lands embraced in a two-hundred-acre patent, which had been granted to Benjamin Miniard, and those in and under the lands embraced in the seventy-five-acre patent and the fifty-acre patent, which had been granted to Wm. Miniard; and those in the land embraced in a two-hundred-acre patent, which had been granted to John A. Metcalfe; and the coals, minerals, etc., in all the other lands, in controversy, it found for the appellant, and the court rendered judgment in favor of appellee for the recovery of the coals, minerals, privileges, etc., sued for in the lands, which the jury found for him, and adjudged in accordance with the prayer of the answer and counter-claim in favor of appellant as to the coals, minerals, etc., in the other lands in controversy.

Both appellant and appellee filed grounds and moved the court to grant a new trial, as to that portion of the verdict and judgment which was unfavorable to them, respectively. The court overruled the motions and the appellant has appealed from all that portion of the judgment, which adjudged a recovery of anything

against it, and the appellee, by a cross-appeal, seeks a reversal of the judgment to the extent that it is adjudged, that appellant was the owner of the coals, minerals, etc., in the tracts of the land described as the Taylor Huff and Walter Miniard tracts, respectively, and as to that portion of the Wm. Miniard tract, which is covered by the patent granted to Wm. Miniard, No. 58985.

(1) The first question, which naturally arises is, as to the propriety of the giving of the peremptory instruction to find for appellee the coals, minerals, etc., in and under the lands designated in that instruction. The giving of a peremptory instruction, in a trial, where an issue is made upon the pleadings, is always predicated upon the fact that all of the evidence tends to support the contention of the party in whose favor the verdict is directed, and hence, there is nothing left to be submitted to the jury. In the instant case, to justify the giving of the peremptory instruction in favor of the appellee, it should appear that all the evidence goes to support the averment, that appellee is the owner of the coals, minerals, etc., in and under the lands designated in the instruction; and that all the evidence tends to show that these lands were not included in the lands excluded from the patent to Lockard and the deed to appellee; and that there is an absence of any evidence, which tends to support the claim of appellant to title, by adverse possession of the coals, minerals, etc., in the lands designated in the peremptory instruction, or that these lands were, in the adverse possession of the appellant or its vendors at the time of the making of the deed, under which appellee claims. It is conceded that the patent granted to C. O. Lockard on November 4th, 1873, and the deed under which appellee claims, dated May 11th, 1907, embrace all the lands mentioned in the peremptory instruction. It is, also, conceded that such of the lands as are covered by the peremptory instruction and which had been granted by patent to others than C. O. Lockard, that the appellant had derived title to the coals, minerals, etc., in them from the persons to whom same were patented. It only remains then to be determined, whether it was shown, that these lands are not within the lands excluded in the Lockard patent and by the deed to appellee, and that the title of appellee is paramount, and whether the appellant or those under whom it claims had acquired title by adverse possession to such lands, and

whether the deed of appellee for the lands is champertous and void. As applying to all of the lands recovered by appellee under the peremptory instruction, as well as all the other lands in controversy, it is elementary to say, that the senior grant vests the legal title in the holder of such grant, and that the senior grant is always the paramount title, unless it has been lost to the holder by the adverse possession of another, or he has renounced his title. It is, likewise, elementary to say, that the law vests the possession of land in the paramount title holder, and that a senior grantee is by construction and operation of law in the constructive possession of the land, where it is not in the actual possession of another. The appellant claims title to the coals, minerals, etc., in the Lewis Turner tract of land under Lewis Turner, and his title is based upon a patent to him of the land, which was granted upon a survey made on February 26th, 1887. The appellant's title to the coals, minerals, etc., in the James Miniard tract of land is deduced from a patent granted to James Miniard on November 17th, 1890. The appellant's title to the coals, minerals, etc., in the Wm. Miniard tract No. 2, is deduced from a patent, which was granted to Wm. Miniard, based upon a survey made on November 18th, 1890. The title of appellant to the coals, minerals, etc., in the portion of the John Huff tract, which lies outside of the boundary lines of a patent granted to David Turner, and which was based upon a survey made November 18th, 1890, is not deducible from any grant made by the Commonwealth of Kentucky, and a large portion of that tract does not seem to be covered by any patent, except that granted to Lockard, under which appellee claims title. The title of appellant to the coals, minerals, etc., in that portion of the Wm. Miniard tract, No. 1, which is not embraced by the patents, No. 58985, No. 58984, and No. 64344, is not deducible from any patent granted to appellant or its vendors, and is covered, alone, by the Lockard patent. The appellant's title to the coals, minerals, etc., in the portion of the John L. Turner tract, which lies outside of the Ballard Begley patent and the patent to Israel Napier, No. 67056, is not deducible from any patentee, under which appellant claims, the Lockard patent, alone, embracing it. Hence, it will be observed, that appellant's claim of title to the coals, minerals, etc., in the foregoing six tracts of land, which were designated in the per-

emptory instruction, in the first four instances, is founded upon patents and surveys in point of age, long subsequent to the Lockard patent, and in the other two instances upon the deeds of vendors, who had no title to the lands, and the deeds were not made until the year 1903. The title of appellant, then, to the ownership of the coals, minerals, etc., in these tracts of land designated in the peremptory instruction, if any title it has, must arise from an adverse possession of the lands by appellant's vendors through whom it claims title, as the appellant, itself, has never had any actual possession of any of these tracts of land at any time. A possession, which, if continued the statutory period of fifteen years, will ripen into a title, must, in the first instance, be an actual possession. Before one can acquire an actual possession to lands to which he has no title, or only has such grounds to claim of ownership, which merely give him a color of title, he must enter upon the land with the intention of holding it. If he is without color of title, he must claim it to a well marked and defined boundary. If he enters under a deed, patent or other written instrument evidencing title, with the intention of possessing the land to the extent of the boundaries described in his deed, patent or writing, he will be in the actual possession to the extent of his boundaries, or to the extent his boundary is not in the actual possession of another, or unless the boundary described in his color of title embraces a lap, upon a senior grant, in which instance, he will not be in the actual possession of the portion embraced in the conflict, unless he actually enters upon the part in conflict. The adverse possession necessary to create title does not consist of mental conclusions or intentions, but it must have for its basis the existence of physical facts, such as making an improvement upon the land, or doing other acts upon it, as will openly evince a purpose to hold a dominion over it in hostility to the title of the real owner, and such as will give notice to the real owner that the purpose is to hold it in hostility to his title. This adverse holding must continue for the statutory period of fifteen years. Frazier v. Ison, et al., 161 Ky. 379; Wilson v. Stivers, 4 Dana 634; Lillard v. McGee, 3 J. J. M. 552; Caskey v. Lewis, 15 B. M. 27; Smith v. Morrow, 7 J. J. M. 442; Trotter v. Cassady, et al., 3 A. K. M. 365; Trimble v. Smith, 4 Bibb 257; Whitley County Land Co.

v. Powers, 146 Ky. 801, and many other decisions of this court.

Keeping in view the principles above announced, it will be necessary to make an examination of the evidence with reference to the adverse holding, which appellant claims its vendors had to the lands designated in the peremptory instruction. The difficulty of such a consideration will be appreciated, when it is considered that the testimony, in a case of this kind, is scarcely intelligible, unless it is accompanied by a map, from which the witnesses testify, and upon which are laid down the various streams, patents and other deed boundaries, and the evidences of possession, in the way of a clearing and fencing of lands, and houses, which are referred to by the witnesses. One of the maps which accompanies the record contains but very little, which will illustrate the evidence, as it contains representations of but few of the tracts of land, which are in controversy or referred to in the evidence, and the other map contains only a portion of such lands. As an instance, much testimony is given as to the H. M. McDaniel tract of land and the John A. Metcalfe patent, and the location of it, and the Jesse Lewis patent, referred to in the evidence, and there is nothing upon either map with reference to those patents. While the witnesses in their testimony appear to be pointing out the location of the patents and lines and streams and other objects, which are said to be upon the maps, a careful examination of them develops the fact that the objects about which they speak are not shown upon the maps in many instances at all. A review of the evidence under these difficulties fails to disclose that the vendors of appellant have ever, at any time, made an entry upon the lands designated in the peremptory instruction, or made any improvements thereon, or done any act, which evinced upon their part a purpose to hold or claim the lands or to exercise dominion over them, except in one or two instances, and the acts done by them were admittedly, at, too recent a date to create a title by adverse possession. Where such of the portions of the lands as were a part, only, of junior patents, which were granted to the vendors of appellant, no entry upon or actual possession of such patents is shown, as might be construed into an actual possession by construction of the entire patent and thus actual possession of the part found for appellee under the peremptory instruction. It is in-

sisted, however, that the evidence does not show that the lands to which the peremptory instruction related are without the lands, which were excluded in the patent to Lockard and the deed under which appellee holds, and hence, it was error for the court to adjudge, as a fact, that they were without the exclusions, and to take away from the jury the power to pass upon that issue by the peremptory instruction. The appellee relied for title to the lands in controversy upon a patent and deed from which a large number of acres were excluded on account of prior grants or entries and prior sales of portions of the lands embraced within the exterior lines of the patent and deed, it was incumbent upon him to show, by proof, that the lands, in which the coals, minerals, etc., which were sought to be recovered, were located, were within the exterior boundaries of the deed and patent, and not embraced by any of the exclusions. The exclusions, of course, are not embraced in the patent or deed and the appellant cannot have any title to the lands embraced by the exclusions. The evidence offered to prove the affirmative upon that issue was not contradicted. It was shown, without any question, that the lands, in controversy, were within the exterior lines of the deed and patent. Upon the issue as to whether or not they were included in any of the excluded lands, it was shown by the agent of appellee, and who was a surveyor of experience, that he was well acquainted with the territory embraced by the patent and deed; with the water courses and other natural objects upon it; that with the assistance of an attorney, he visited the land office of the state, at Frankfort, and there sought diligently for ten days to find all the prior grants included in the exterior lines of the patent; that he examined the records in that office, which show all the grants; that after an exhaustive search and having obtained copies of all the prior grants, which he could find, he had them surveyed and located; that none of them interfered with the lands in controversy; that he knew the location of the thirty-nine tracts, which were excluded from appellee's deed as having been sold to the Burt & Brabb Lumber Co., and none of them included the lands in controversy; that he knew where all of the specific exclusions in the patent were located, except four, and he knew that these did not interfere with the lands in controversy. Other evidence heard in addition to that of the agent shows it to be reasonably cer-

tain, that the lands in controversy are not embraced
within any of the exclusions. The tracts described in the
petition are the only ones in issue, and no proof was
heard or offered, which tended to prove that any of the
lands in controversy were embraced by any of the ex-
clusions. When the appellee had shown substantially,
that the lands sued for were within his grant and not in-
cluded in any prior grants or exclusions, the burden then
shifted to the appellant to show, if he could, that the
lands in controversy are included in an exclusion or prior
grant. Bowling v. Breathitt Coal, Iron & Lumber Co.,
134 Ky. 249; Caddell v. Eagle Coal Co., 144 Ky. 396;
Steele v. Bryant, 132 Ky. 569; Miller v. Breathitt Coal,
Land & Lumber Co., 152 Ky. 390. In Steele v. Bryant,
*supra,* which involved the same question now under con-
sideration, the court said:

"In cases of this sort the plaintiff ought not to be re-
quired to do a thing that is impossible. He ought only
to be required to furnish such proof as is practicable;
and, if his proof reasonably establishes that the land is
within his patent, and not within any prior grant, the
burden shifts. The defendant may show that the prior
grant includes the land, although he does not connect him-
self with it."

The other cases cited sustain the doctrine announced
in Steele v. Bryant, *supra.* There being an entire ab-
sence of any proof that the disputed areas were covered
by any exclusions in the patent or deed or by any prior
grants, and no contradictions of the testimony upon that
subject, the court did not err in giving the peremptory
instruction.

It is insisted with reference to that portion of the
John Huff tract, which is outside of the exterior lines of
the David Turner patent, that there was evidence to the
effect, that a portion of it was embraced in a patent prior
to that of Lockard, and which was granted to James
Turner, on a survey made on the 26th day of May, 1852,
and for that reason it was error to peremptorily instruct
the jury to find for appellee all that portion of the John
Huff tract, which was without the David Turner patent.
The proof of a portion of it being within the James
Turner patent consisted of the statement of one of the
surveyors, that it was his opinion, that it was so em-
braced, but that he had not made any survey of the
James Turner patent and knew nothing of its lines or to

where they would extend, except that some person had informed him of the location of one of the corners. It is a matter of common knowledge, that such information as that does not constitute any evidence of where the lines of a patent made sixty odd years ago will be located, when surveyed, and hence, it was not sufficient to require the submission of the question to the jury.

(2) As before stated, the jury found in favor of the appellee as to the H. M. McDaniel tract, the Benjamin Miniard tract and the Wm. Miniard tracts covered by the seventy-five-acre and the fifty-acre patents, and of these findings the appellant complains and insists that the court should have directed a verdict in its favor as to all of these tracts and should have granted it a new trial as to them, when the jury found against it. In neither of these contentions can we concur. The H. M. McDaniel tract lies wholly within a junior patent granted to John A. Metcalfe for two hundred acres of land and which is based upon a survey made on October 24th, 1882. Benjamin McDaniel acquired it from Metcalfe, and conveyed the portion of it in controversy to H. M. McDaniel. The evidence for appellant tended to prove that the Metcalfe patent had been occupied by the McDaniels since the year 1894, while the evidence for appellee was to the effect, that it had never been occupied, for any time, by any one, and that the only evidence of adverse possession, which any one had ever held of it, that was visible upon it, was upon one edge, where a clearing had been extended from adjoining lands upon it to the extent of about two acres, and the portion upon the Metcalfe patent, which had been cleared, appeared to have been done for only about four years. As to the Benjamin Miniard tract, it is embraced entirely by a patent, which was granted to Benjamin Miniard on a survey made on the 25th day of February, 1887. The evidence for appellant tended to prove that Benjamin Miniard had entered upon this tract before the year 1907, and cleared a small field upon it; that the field has been cleared and fenced for about eight or nine years, while the evidence for appellee tended to prove that the only evidence of actual possession upon it is a small clearing extending into this tract from adjoining lands, the ownership of which is not disclosed, and that it had been made in recent years. The seventy-five-acre patent to Wm. Miniard was granted upon a survey made on November 17th,

1890, and the fifty-acre patent was granted upon a survey made on April 15th, 1883. No improvements of any kind were ever made upon the lands embraced in either of these patents, and no evidence of any physical possession of the lands embraced in either of them was offered. They adjoin a one-hundred-acre patent granted to Wm. Miniard on a survey made on April 5th, 1883, upon which there is a small field, which was cleared and fenced from sixteen to eighteen years previous to the trial, which occurred in February, 1914. Although the jury was instructed, that if the three patents mentioned, to Miniard, adjoined and made one connected boundary of land and he entered and held one of them in adverse possession, his actual possession extended to the lands embraced in all of them, the jury found that he had not had the fifty-acre and the seventy-five-acre patents in adverse possession for the time necessary to create title. As regards the McDaniel tract, the Benjamin Miniard and the Wm. Miniard fifty-acre and seventy-five-acre tracts, the evidence is sufficient to sustain the finding of the jury, and there being no error in the instructions, which is prejudicial to appellant and of which it can complain, there seems to be no reason to disturb the verdict of the jury.

(3) The appellant complains seriously of the finding of the jury as to the fifty-acre tract and the seventy-five-acre tract, above referred to and known as the grants made to Wm. Miniard, and insists that the law, which applies to the facts proven in regard to these two tracts, entitled the appellant's vendors to hold them under the doctrine of adverse possession and should have been adjudged to it upon a peremptory instruction, and offered an instruction as applying to these tracts, as well as others, which the court denied, and which was in fact a direction by the court to the jury, that if one resided upon a tract of land to which he had title and takes a deed or grant to an unoccupied tract of land adjacent to that upon which he lives and to which he claims title, his possession at once, by operation of law, extends to the outside boundary of the newly acquired lands, unless the newly acquired land was at the time in the actual possession of someone else. It is the doctrine enunciated by the rejected instruction, which is now contended for by appellant. As applying to the Wm. Miniard seventy-five-acre and fifty-acre and one-hundred-acre tracts of

land, in controversy, the court substantially instructed the jury in accordance with the principles of that proposed instruction, and under the particular facts of this case, it seems to have been more favorable to appellant, than it was entitled to. Wm. Miniard has resided for over fifty years upon the land embraced in a patent, which was granted to his father in the year 1853, for three hundred acres of land, and which is not involved in this action, as it was granted prior to the Lockard patent and probably is not embraced in the exterior lines of that patent. The lands embraced in the one-hundred-acre, the seventy-five-acre and the fifty-acre patent to Wm. Miniard and which were in controversy, were granted at the following dates, respectively, April 5th, 1883, November 17th, 1890, and May 4th, 1883. They are all subsequent grants to the title of appellee; within the Lockard patent and contiguous to each other; and one or more of them are contiguous to the old three-hundred-acre patent upon which Miniard lived. As before stated, upon the seventy-five-acre patent nor the fifty-acre patent, there had never been any actual possession taken by Wm. Miniard or any evidence of any dominion over them by him, although he stated in his testimony that he had claimed to be the owner of them. Upon the one-hundred-acre patent, the mineral rights in which the jury found to be in the appellant, Wm. Miniard had opened a small field and put it under fence and cultivation for sixteen or eighteen years before the trial. If the jury believed that this improvement was made fifteen years prior to the institution of the suit, which was filed on September 24th, 1912, that fact, or else that it was in the adverse possession of Miniard, in 1907, when appellee obtained his title, was probably the basis of its verdict in finding for appellant as to that tract. It is now necessary to determine what principles of law should be applied to the state of facts presented. There was no actual possession shown by appellee of the lands embraced within his deed, but by the fiction of the law, he was in the constructive possession of all of the lands embraced within his deed, which were not in the actual possession of another. Neither the appellant nor Wm. Miniard, under whom it claims title, as stated before, was or had ever been in the possession of either the fifty or seventy-five-acre tracts, unless the contention of appellant, that the fact that its vendor lived upon and owned

an adjoining tract of land, when he acquired junior patents to the fifty and seventy-five-acre tracts and the one-hundred-acre tract, or from the fact that he entered upon the one-hundred-acre tract and reduced it to possession, he, thereby and without any entry or other act indicating a purpose to possess the fifty or seventy-five-acre tract, became in the adverse possession of them, and so continuing for the statutory period, became their true owner. The vendors of appellee having the constructive possession of the seventy-five, fifty and one-hundred-acre tracts at the time the patents were granted to Miniard, it is a well settled maxim of the law, that their constructive possession of the lands embraced within these patents could not be divested, except by an actual possession. To acquire an actual possession, an actual possession, in fact, must be taken or such acts must be done by the claimant to vest in him an actual possession, by construction. It is not contended that Miniard ever took actual possession, in fact, of either the seventy-five-acre or the fifty-acre grants, and if he ever had any actual possession of either of these two grants, it was necessarily an actual possession by construction. One having the title to the lands, of which he is at the time in the actual possession, and acquires the title to contiguous tracts, and has the intention of holding the possession to the extent of the boundaries of all, is in the actual possession of all. Having already the constructive possession, by reason of being the owner of the titles, the law waives the necessity of an entry upon each of the newly acquired tracts, and the actual possession, which he has of the tract contiguous to them, is extended over all of them by operation of law. Harrison v. McDaniel, 2 Dana 354; Everidge v. Martin, 164 Ky. 497, 2 C. J. 243; Mounts v. Mounts, 155 Ky. 363; Miniard v. Napier, 167 Ky. 208. One without a color of title may create an actual possession in himself, by construction, to parts of a tract of land, by entering thereon and using and occupying a part and claiming it to a well marked and defined boundary, which either already exists or which he places there. He is then in the actual possession of the portion, which he incloses and uses, and is in the actual possession, by construction, to the extent of his well marked and defined boundary, unless the land is in the actual or constructive actual possession of another, and then his actual possession only extends to his enclosures. LeMoyne     v.

Meadows, 156 Ky. 832; Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232; White v. McNabb, 140 Ky. 828; New Domain Oil Co. v. Gaffney, 134 Ky. 792; Campbell v. Thomas, 9 B. M. 82; LeMoyne v. Litton, 167 S. W. 916. One having a color of title may have an actual possession, by construction, to parts of a tract of land by entering thereon with the intention to take and hold possession to the extent of the boundaries of the deed, patent or other instrument, which gives color of title. He is then in the actual possession of the portion of the premises, which he occupies and in the actual possession, by construction of the remainder of the tract, where same is not in the possession of another. Thomas v. Harrow, 4 Bibb 563; Fox v. Hinton, 4 Bibb 559; Daniel v. Ellis, 1 A. K. M. 60; Harrison v. McDaniel, 2 Dana 48; Kendall v. Slaughter, 1 A. K. M. 375; Taylor v. Buckner, 2 A. K. M. 18; Chiles v. Conley, 9 Dana 385; McLawin v. Salmon, 11 B. M. 96; Franklin Academy v. Hall, 16 B. M. 472; Taylor & Crate v. Burt & Brabb Lumber Co., 109 S. W. 348; Slaven v. Dority, 142 Ky. 640. Without actual possession of some part of a tract of land, there can be no constructive possession of any part, by one without title or one having a mere color of title, under a deed, patent or other instrument, which makes an inferior title. It will be observed that a constructive possession created by an actual possession of a part of a tract, and a claim of possession to the boundaries of an instrument which gives a mere color of title, extends only to the boundaries described in the instrument. If the occupation of a tract of land under an instrument, which makes only a color of title, creates a constructive actual possession of the unoccupied lands embraced by the instrument, only to the extent of the boundaries described in it, it is difficult to see how the holding of one tract of land under such an instrument would create an actual possession, by construction, to other separate and independent tracts of land, although contiguous to the tract held under the instrument. It has been held in this jurisdiction, by a uniform line of decisions, that where there is a lap of a junior upon a senior grant, and although the senior patentee has never entered upon any part of his grant, and has only the constructive possession of it, which the law vests in him, and the junior patentee enters upon his grant, but without the lap, and although he does so with the intention

of holding to the extent of his boundaries, he is not in the possession of the lap, either actually or constructively, because his possession of it would be only constructive, and such possession would not displace the constructive possession, which the senior patentee already has. Trimble v. Smith, *supra*. In the instant case, the appellee and his predecessors, in title, have had the constructive possession of the lands included in the seventy-five-acre and the fifty-acre patents, then how could the constructive possession, which it is claimed, that Wm. Miniard obtained over the unoccupied portion of the one-hundred-acre patent, by entering upon it under a mere color of title, disseize the appellee of his constructive possession of the seventy-five and fifty-acre grants? While there has been some divergence of opinion and expression in the many decisions of this court, with reference to land titles, arising largely from the different states of fact in the different cases, it has been practically settled as a rule of property in this state, that one who owns and resides upon a tract of land and acquires an inferior title by deed or otherwise to an adjoining tract, to which someone else has a constructive possession by reason of his legal title, does not acquire an actual possession of the tract to which he holds a color of title by reason of the deed to him, and before he obtains the adverse possession of it, he must enter upon it and take physical possession of it. Whitley County Land Co. v. Powers, 146 Ky. 801; Bowling v. Breathitt Coal, Iron & Lumber Co., *supra*, Quisenberry v. Chenault, 136 S. W. 625.

It is, also, held, that where one enters under a deed, upon land, to a part of which the vendor's title was valid and to a part of which the vendor's title was invalid, and was covered by a valid title of another, and he occupies the portion to which he has a good title, he thereby does not become in the adverse possession of the portion to which he has not a valid title, unless he actually enters upon it and subjects it to his use and dominion, and in such a manner that it will be notice to the true owner, although a different rule applies, where his title to all the land embraced in the deed is invalid. An adverse possession must be based upon some physical acts performed upon the land, as will give the true owner notice, that another is in the possession of his land, and the acts necessarily must be such, that they would enable

the owner to maintain an action of ejectment or trespass against the intruder. Where an intruder has a deed or patent, which gives him a color of title, and it is of record, the owner may, by investigation, learn the extent of the intruder's possession, when he has received notice of the adverse holding by seeing his acts upon the property, but an instrument creating a color of title does not necessarily have to be of record, and even a recorded instrument would not give warning, as the owner could not know that the person to whom the instrument gives color of title would ever undertake to assert his claim to ownership, by taking possession of the land, until he has done so. There is no step necessary for the owner to take to care for his interests, until the claimant, under color of title, undertakes to subject the property to his use and dominion. In the instant case, the patents, each, embraced an independent survey, and were granted at different times, and a deed executed by his brothers to the patentee for their interest in the three-hundred-acre patent, and which was made to include the lands in controversy, would not change the right of the appellee since that deed was made only ten years ago. Following the decisions of this court and the analogies of the law, it does not seem that Wm. Miniard's actual possession of the three-hundred-acre tract of land, which he owned, nor of the one-hundred-acre tract, to which he had a color of title, if he was in the actual possession, did not put him in the actual possession of either the seventy-five nor the fifty-acre patent boundaries, and hence the claim of title to them by adverse possession, or that the conveyance to appellee was champertous and void must both fail, and the court did not err in rejecting the instruction offered.

4. The cross-appeal is as to the judgment of the court adjudging the ownership of the coals, minerals, etc., in three of the tracts of lands, which were adjudged to appellant. They are the Taylor Huff tract, the Wm. Miniard one-hundred-acre patent boundary, and the Walter Miniard one-hundred-acre patent boundary.

The Taylor Huff tract is not embraced by any patent, except the Lockard, under which appellee claims title. The appellee should have recovered it, unless the appellant had title by adverse possession or it was in the adverse possession of appellant or its vendors when the deed to appellee for the lands was executed. At the

time of the trial Taylor Huff, the vendor of appellant, had died. It seems that Taylor Huff claimed to be the owner of this tract of land under a deed, which was executed to him by John Huff, on July 2nd, 1891, and it embraced the land in controversy. It is insisted by the appellee that the court should have directed a verdict in its favor for this tract of land, and insists 'that the only evidence of any adverse possession of it by Taylor Huff was a small clearing, which commenced upon the boundary within a patent that was granted to Jas. Miniard on November 17th, 1855, anterior to Lockard's patent, and that this clearing and improvement extended for some short distance within the boundary of the deed from John Huff to Taylor Huff, and that Taylor Huff did not reside within this boundary, and did not make the improvement referred to, but that he resided at a place upon an adjoining patent, which was granted to William Turner and Wm. Miniard, and was older in point of age than the Lockard patent. The land covered by the patent to James Miniard on November 17th, 1855, was conveyed to Taylor Huff by Miniard on June 21st, 1897. There was other evidence, however, to the effect that Taylor Huff had lands cleared and fenced upon the tract in controversy for twenty-five years before the trial, and under these circumstances, the question of adverse possession and champerty were ones for the jury, and it determined under the instructions that Taylor Huff had maintained an adverse possession to the land for the statutory period necessary to create title, and its verdict cannot be now disturbed.

(5) The appellee insists that the court was in error in not directing a verdict in his favor for the coals, minerals, etc., in the Walter Miniard one-hundred-acre patent boundary, and the Wm. Miniard one-hundred-acre patent. While the evidence for appellee was being heard upon the trial, he offered in evidence a copy of the pleadings, process, and of the judgment, in the action of Cordelia B. Lockard, et al. v. Asher Lumber Company, et al., in the United States Circuit Court for the Eastern District of Kentucky. An objection was sustained to the introduction of this record as evidence, to which appellee excepted and now complains of the ruling of the court as prejudicial error. The complainants in that action were the devisees under the will of C. O. Lockard, and the vendors of appellee. Among the defendants were Wm.

Miniard and Walter Miniard, through whose possession of the surface of the lands, the appellant is, in this action, claiming the ownership of the coals, minerals, etc., in the two tracts of land now being considered. They were served with process and appeared in that action and made a defense to it. The action was to quiet the title of the complainants, together with various other tracts within the Lockard patent, to the two tracts of land now under consideration, and to enjoin Walter and Wm. Miniard from trespassing or committing waste upon the lands, which are here in controversy, and from ever claiming any right, title or interest in the lands, and to adjudge the complainants to be the owners of the lands, free from any claim or interest of the defendants. The action was filed in the year 1900, but the final judgment was not rendered until March 5th, 1906, and resulted in a judgment in favor of the complainants. The court, after adjudging that the devisees of C. O. Lockard were the true and beneficial owners of the land, adjudged that the defendants in that action, which included Walter and Wm. Miniard, and all persons who should claim under them, to be forever enjoined from trespassing upon the lands, and from setting up, pretending or in any wise asserting any estate, title, right, interest, claim or demand in or to the lands, adverse or contrary to the interest or title of the complainants, or of any person who thereafter might claim under them. The court had jurisdiction of both the parties and the subject matter, but it is insisted that the record and judgment was not competent evidence, in the instant case, against the appellant, because it was a purchaser for value, of the interests claimed by it in the lands, during the pendency of the suit, in the year 1903, and without notice of the claim of appellee's vendors to the ownership of the land, and that the *lis pendens* notice provided for by section 2358a, Ky. Statutes, was never filed in the office of the clerk of the Harlan county court, and that under the express provisions of that statute, the judgment could not affect their interests in the land. It appears that no such notice was ever filed. The statute provides as follows:

"That no action, cross-action, counter-claim or other proceeding whatever . . . . hereafter commenced or filed in which the title to or the possession or use of or any lien, tax, assessment or charge on real estate, or any interest therein, is in any manner affected or in-

volved nor any order or judgment therein, nor any sale or other proceeding thereunder, shall in any manner affect the right, title or interest of any subsequent purchaser, lessee, or incumbrancer of such real estate or interest for value and without notice thereof, except from the time there shall be filed in the office of the clerk of the county court in which the real estate or greater part thereof lies, a memorandum, etc. . . . . ''

It is provided that the memorandum shall state the style and number of the action and the court in which it is commenced or pending and the name of the person whose interest in the real estate is involved, and a description of the real estate affected by the proceeding. We do not concur in the view urged by counsel for the appellee, that a *lis pendens* notice, as provided by that statute, is unnecessary in order that the proceeding, sale or judgment may affect the title or interest of a subsequent purchaser, lessee or incumbrancer, for value, without notice, of real estate involved in a suit in a federal court, where the real estate is situated in this state. It is a rule pertaining to property situated in this state, and it is to be assumed, that the federal courts will give force and effect to it, as the courts of the state will do. The notice must be filed by some party, who has an interest, and if the clerk of the county court should refuse to do his duty in regard to it, he could be compelled by proper proceedings to do so. All the cases in this jurisdiction, in which this statute has been construed, have related to instances in which the owner of the property affected had made sales, leases or placed incumbrances upon it, and in no instance has the statute been invoked to protect a purchaser or lessee or incumbrancer, who has purchased or leased property from an individual, who did not own it, or has accepted an incumbrance upon property, which was executed or placed upon it by some one, who did not have any title to it or interest in it. The statute does not seem to have application to the case where a person sells, leases or encumbers real estate, not his own and which he never had owned. In the instant case, the lands in controversy were the property of appellee's vendors, and had never been owned by the vendors of appellant. The vendors of appellant had procured patents subsequent to that of appellee, which gave them only a color of title, and there is no pretense that they had been in possession of the lands for such a time

as to make them owners by adverse possession, at the time of their sales of the coals, minerals, etc., to appellant. As before stated, the appellant must necessarily rely for its title to the coals, minerals, etc., in the lands to the ownership of the lands by its vendors, acquired by adverse possession. The statute, section 2366a, Ky. Statutes, is invoked, which provides as follows:

"Wherever the mineral or other interests in or rights appurtenant to land in this Commonwealth have heretofore passed, or shall hereafter pass, in any way, from a claimant in possession of the surface of said land, the continuity of the possession of such mineral, interests and rights shall not be deemed thereby to have been or to be broken; but the possession of the surface by the original claimant thereof, from whom such mineral, interests or rights passed, or by those claiming through or under him, or by virtue of a judgment against him in an action to which the holder of said mineral, interests or rights is not a party, shall be deemed to have been, and hereafter to be, the possession of such mineral, interests and rights in said land for the benefit of said person, his heirs and assigns, to whom said mineral, interests or rights have or shall have passed as aforesaid."

Under the provisions of this statute, it seems, that if the vendors of appellant were in possession of the lands when they sold the coals, minerals, etc., to appellant, and thereafter remained in possession until they had been in the adverse possession of the lands for the statutory period, counting from their first acquiring actual possession of the lands, the title of appellant was made valid, but, if before the statutory period had expired, they had abandoned the possession or been evicted by the owners of the paramount title, then the title of appellant failed. The possession of its vendors, or those claiming under or through them, inured to the benefit of the appellant, but, if its vendors did not keep the adverse possession, then, in the absence of such adverse possession, there was nothing to ripen the appellant's claim into a title. If the one holding the possession, and upon whose possession the appellant depends for the ripening of its title, is estopped to deny the title of appellee, and is prohibited from claiming to own the land, or any interest in it, and from holding it adversely to the appellee, it seems that appellant would be in no better condition than he would be, if the possession was entirely vacant. The suit in

the Federal District Court put the title to and ownership of the lands in issue between appellee's vendors and the minerals just as fully and completely, as if it had been a suit in ejectment, instead of *quia timet.* The judgment of the court therein was conclusive between the parties. The statute of limitation gives title only to those who hold adverse possession of land, claiming it as their own, undisturbed, continuously and peaceably, for as many as fifteen years. An action is the only way provided for disturbing one who is in possession of a tract of land, and claiming to own it. A judgment, which determines that he is not the owner and forbids him to claim to be such, and enjoins him from using or trespassing upon the land, concludes his right to hold it adversely. Any adverse possession, which he might have had or claimed before the institution of the action in which the judgment was rendered or pending, is extinguished by the judgment, and if he would create a title to the lands, either in himself or that would inure to the benefit of the holder of the minerals under the surface, he must remain in adverse possession of the land for fifteen years after the judgment. When the judgment was rendered, it then became his duty to give up the possession and to refrain from any further possession of the land, or claim to its ownership. Such a judgment is a termination of any claims or rights he had in the land. It breaks the continuity of his possession, if any he had theretofore. During the fifteen years necessary for him to hold the land in order to create a title by adverse possession, after the judgment, although his possession might be sufficient under the statute of limitations, he having been estopped to deny the title of the owner, it is not such adverse possession as will make a sale and conveyance by the owner void, as being against the champerty statute. Perry v. Eagle Coal Co., 170 Ky. 824; Jones v. Chiles, 2 Dana 34; Barrett v. Coburn, 3 Met. 510; Baley v. Deakins, 5 B. M. 161; Castleman v. Combs, 7 T. B. M. 273; Griffith v. Dicken, 4 Dana 561. Since the judgment in the federal court, the expiration of the time has not been sufficient to permit the creation of a title to the lands by adverse possession, if appellant's vendors have, in fact, maintained such a possession, since the rendition of that judgment. The possession of the vendors of appellant having terminated by the judgment, and the appellee not having taken actual possession of

the land by virtue of the judgment, there has been no actual possession of it by virtue of the judgment, since its rendition. Hence, it seems the court was in error in refusing to admit the record and judgment of the federal court in evidence, and the giving to it such effect as it was entitled to have. Upon the facts presented in evidence, after the admission of the record and judgment of the federal court, the appellee was entitled to have included in the peremptory instruction in his favor the coals, minerals, etc., in the Walter Miniard tract, embraced in patent No. 51935, and the Wm. Miniard tract, embraced in patent No. 58985.

It is therefore ordered that the judgment be affirmed upon the original appeal, and reversed upon the cross-appeal as to the Wm. Miniard tract and the Walter Miniard tract, which were embraced by the junior patents, Nos. 58985 and 51935, respectively, and otherwise the judgment upon the cross-appeal is affirmed, and the cause is remanded with directions for further proceedings in conformity to this opinion.