## Fordson Coal Company v. Roark, et al.

(Decided March 9, 1926.)

### Appeal from Leslie Circuit Court.

1. Quieting Title.—Burden is on plaintiff, in action to quiet title, to prove title to property, either paper or possessory.

2. Quieting Title—Judgment should be for Defendant When Plaintiffs Failed to Prove Paper or Possessory Title, and Evidence Showed Property to be Included Under Patent through which Defendant Claimed.—In action to quiet title, held, that judgment should be for defendants, where plaintiff failed to sustain burden of showing title, either paper or possessory, and it was shown from evidence that land in question was included in patent through which defendant claimed.

3. Landlord and Tenant—Holding of Property Held Not Adverse, where Plaintiffs, and One Under whom they Claimed, Held Property Under Lease from Defendants, and no Notice was Given Defendant of their Adverse Holding.—Holding of property by plaintiffs, or their ancestor, held not to have been adverse, where they were in possession under lease from defendant, frequently renewed, and it did not appear that after the acceptance of tenancy under such lease defendant was given notice of such adverse holding.

4. Adverse Possession—Title Acquired by Adverse Possession can Only be Divested by Conveyance, Devise or Limitation, and Not by a Tenancy.—If title is once acquired by adverse possession, it can be divested only by conveyance, devise or limitation, and not by a tenancy.

5. Adverse Possession—To Support Title by "Adverse Possession," it Must be Continuous, Actual, Open, Notorious and Peaceable for 15 Years, Exterior Boundary Line of Land Must be Well Defined, and Possession Must Exclude Idea that Right of Possession was in Another.—To support title by "adverse possession," it must have been continuous, actual, open, notorious and peaceable for at least

15 years, the exterior boundary lines of land must be well defined, and the possession must have been of character and extent to exclude idea that right of possession was in any one else.

6. Adverse Possession—Where Exterior Boundary was Not Enclosed or Marked, Question Must be Determined from Description in Deeds Under Which Color of Title was Claimed, to Support Title by Adverse Possession.—In action to quiet title, where the exterior boundary of the land in question was not inclosed or marked, such question must be determined from description in deeds, through which color of title was claimed, in order to support plaintiff's claim of title by adverse possession.

7. Adverse Possession—Deeds Under which Color of Title was Claimed Held of Such Vague and Indefinite Character as Not to Furnish Notice of Extent of Adverse Claim.—In action to quiet title, where plaintiffs claimed title by adverse possession under color of title, hed that deeds under which color of title was claimed gave such vague and indefinite description of lands as not to furnish notice of extent of adverse holders' claim and insufficient to divest true owner of his lands, even though possession was maintained for more than statutory period.

CLEON K. CALVERT and W. R. MIDDLETON for appellant.

MARTIN T. KELLY for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The Fordson Coal Company, defendant below, appeals from a judgment in favor of the heirs of John A. Roark, deceased, quieting title. There are two parcels of land in dispute. As to the first appellees introduced no evidence of title, either paper or possessory, and as the burden was upon them to do this, their action in this respect failed. Besides it is shown in evidence that it is included in the A. J. Asher patent of August 10, 1870, through which appellant claims; it being intimated, though not proven, that it is also within a junior patent issued to John A. Roark on the 12th day of March, 1917. It follows that as to it the judgment should have been for the defendant.

The second interference lies within a patent of 150 acres, surveyed to Wm. B. Asher on December 5, 1871, to which appellant traces its title. It is also embraced in a patent of 50 acres issued to John A. Roark on the —— day of April, 1892, the paramount paper title being in appellant. Appellees claim by adverse possession under color or title and in support of this introduced (1) the last above described patent; (2) two deeds from A. J.

Asher and others to James Roark, the father of John Roark, dated the 18th day of September, 1868; (3) articles of agreement between the heirs at law of James Roark, deceased, appointing commissioners to divide the lands inherited from him, dated March 20, 1887; (4) deeds of partition among the heirs of James A. Roark, including one to John A. Roark, dated April 10, 1890.

It is argued that the boundary is not sufficiently described in the partition deed for it to constitute color of title, but we do not deem it necessary to consider that question, as appellees do not seem to have claimed this land adversely to appellant under this deed; at least not later than 1894.

It is shown in evidence that beginning with January 1, 1894, John A. Roark, by written contract leased from appellant's predecessor in title the Wm. B. Asher tract of land, including the land in controversy and renewed that lease in the years 1896, 1897, 1898; that in 1910, at the request of John A. Roark, that lease was made to his son, Robert A. Roark, one of the plaintiffs, who held it under written leases from January 1, 1911, to January 1, 1923. It is true that the consideration was nominal and plaintiffs deny that they knew of such a lease, except Robert, who admits the lease, but says that he did not know the lines claimed by appellant, and understood that they did not conflict with his father's patent. It further appears, however, that in 1893, Marcum and Philpott purchased the poplar timber on the Wm. B. Asher patent from appellant's predecessor in title; that they built a log shack and cut and removed the timber from the entire tract, including the land in dispute; that the Asher line was within 300 yards of John Roark's house, and that a person could stand upon his porch and hear the chopping and sawing, and see the timber fall; that the logs were hauled down the branch within thirty yards of his house, and that a year and a half were spent in removing them, all of which was done without any objection on his part; that John A. Roark was present when the lines were marked to Marcum and Philpott, and then procured permission from appellant's predecessor to get board timber and coal from the land now in dispute, for his private use; that in 1920 he pointed out to appellant's surveyor the corners of the Asher patent, telling them that he had formerly leased the land. Also in a conversation with Judge L. D. Lewis in reference to the Asher land at about that date, he said

that he had a junior survey to this land but did not think he could hold it. This evidence is practically uncontradicted, except by statements to the effect that John A. Roark was claiming to own all of the land in his boundaries, and that these embraced the land in controversy. He did not live within the lap, but had prior to this time extended his clearing on what is known as field No. 2, and inclosed some three or four acres of the interference within that field, but no other hostile act is shown until within three or four years prior to the filing of this suit. It is true that the leases introduced in evidence are executed by mark, and appellees deny knowledge of their existence, but their execution is clearly proven by the attesting witness, who stands unimpeached, and their validity is strengthened by John A. Roark's approval of the removal of the timber above mentioned, which is not contradicted by anyone, and which also negatives any claim of adverse holding on his part. Inasmuch as it is not shown that, after John A. Roark accepted this tenancy, either he or appellees ever gave notice of an adverse holding, we must conclude that whatever possession was exercised by John A. Roark or his children, subsequent to the year 1893, was not adverse. Upchurch v. Sutton, 142 Ky. 420; Cummings v. Watson, 182 Ky. 56; Padgett v. Decker, 145 Ky. 227; Ward v. Edge, 100 Ky. 757; Frazier v. Morris, 161 Ky. 72.

But it is strenuously argued that the heirs of James Roark had acquired title to the lands in dispute by adverse possession prior to the year 1893 and conveyed same to John A. Roark and that thereafter his title could be divested only by conveyance, devise or limitation, and not by a tenancy, such as is here shown. If this premise is sustained by the facts the legal principle seems to be correctly stated. 2 C. J. 256; Sutton v. Pollard, 96 Ky. 640; Martin v. Martin, 76 Neb. 335, 107 N. W. 580; 124 A. S. R. 815.

It may be said that an adverse holding prior to 1893, and a subsequent amicable holding presents an unusual state of facts, but this could occur, and leads to an inquiry as to the state of title on January 1, 1894. The elements of title by adverse possession are well stated in Young v. Pace, 145 Ky. 405, thus:

"In order to support a title by adverse holding, three facts must be established: First, the possession must have been continuous, actual, open, notorious and peaceable for at least 15 years; second, the ex-

terior boundary lines of the land so claimed must be well defined, *i. e.*, either actually enclosed, or so marked that the land is susceptible of being identified by its description; and, third, the possession must have been of such a character and extent as to exclude the idea that the right of possession was in any one else.''

Considering the facts relative to this, it appears that under the deed from A. J. Asher, etc., on the 18th day of September, 1868, James Roark settled upon Jack's creek and its tributaries in Clay, now Leslie county. This creek empties into Red Bird about one-quarter of a mile west of its junction with Old House branch. The trend of Old House branch is northeast for some little distance to a fork, the left fork running north and the right fork east across and through the main part of the land in controversy. Above the junction of Old House branch, Jack's creek receives Dillon's branch on the east, Long hollow on the south and Short hollow on the southwest. A spur of hills lies to the west of Long and Short hollows and runs south, thence east, thence north, forming a watershed around these hollows, and on in a northerly direction, reaching and including what is claimed to have been a conditional line between James Sizemore and James Roark, part of this line being marked but not extended to any fixed termini. James Roark built his residence on Old House branch and cleared and enclosed lands on each side of it from its mouth up Jack's creek and its tributaries. There is evidence that he was claiming all the lands within the watershed of Long and Short hollows, and so much of Old House branch and Jack's creek as lay west of the conditional line named, there being no evidence at all as to his northern boundary. He placed his children on different parts of this land and after his death it was partitioned among them as indicated; some of them or their vendees residing on it continuously during all of that period. The portion allotted John A. Roark was the northern part of his father's farm, and as claimed by appellees, though not definitely so described in their deed, it was bounded on the south by the watershed between Old House branch and Dillon's branch, on the east by the conditional line between James Roark and James Sizemore, circling the head waters of Old House branch on the north and east. This boundary laps over and embraces the principal part of the Wm. B.

Asher survey.   It includes the old residence of James
Roark, the one in which John Roark lived and died,
and the one in which his widow still resides, a residence
occupied by Lawrence Roark a son and a tenant house;
but none of these is on the disputed land.   It also em-
braces five enclosed fields, four of which have been in cul-
tivation for many years, all of these being without the in-
terference, except a small part of field No. 2.

It thus appears that there is evidence tending to
show all the elements of adverse possession except the
extent of the possession.   As to this admittedly much of
the claimed exterior boundary is not enclosed or marked,
hence this question must be determined from the descrip-
tion in the deeds through which James Roark claimed
color of title.   As suggested above, there were two of
these executed the same day, differing only in descrip-
tion, and but little in that, the first description reading:

"A certain tract or parcel of land lying on Jack's
creek where he now lives in Clay county, Kentucky,
containing 300 acres, more or less, to include a cer-
tain boundary.  Beginning at the upper end of Long
field near the mouth of Old House branch; thence up
said branch, including the Dempsey improvement;
thence running with the branch to the mouth of
Jack's creek at the crossing of same; thence running
with a little drain to the top of the ridge, a south-
west course, including all the land in that boundary
up Jack's creek to said James Sizemore's line."

The second description being:

"A certain part, tract or parcel of land lying on
Jack's creek where he now lives in Clay county, Ken-
tucky, containing 300 acres, more or less, to include
a certain boundary.  Beginning at the upper end of
Long field, near the mouth of Old House branch;
thence running with the branch to the mouth; thence
crossing Jack's creek, Jack's creek running with a
little drain to the top of the ridge, a southwesterly
course, including all the land in that boundary up the
said Jack's creek to Jimmy Sizemore's line."

The Long field is located on Jack's creek oppo-
site the mouth of Old House branch.   There is hearsay
evidence placing the "Dempsey" improvement on upper
Dillon's branch and also on Old House branch, but no

competent evidence as to either.  A small drain empties into Jack's creek on the opposite side and below the mouth of Old House branch, and runs to the top of the ridge at a point west of the Roark lands, but some distance south of the central part thereof.  The so-called James Sizemore line is a mile or so east of this point. There is evidence of some marked trees and other natural objects along this course, but it has no southern terminus joins no other line at either end and as located by appellees does not extend much over one-half the length of the eastern boundary of the Roark lands as claimed by them.  With these objects located, it will be observed that in the first description the second call was "up the Old House branch, including the Dempsey improvement," to an indefinite point; the third call reversed the second and ran to the mouth of Jack's creek at the crossing of same.  Certainly a straight line could not include outlying lands, and nothing is added to this call by the use of the words "including Dempsey improvement." Further it is not claimed that the Roark lands reached to the mouth of Jack's creek or that there was any known crossing at that place.  However, as suggested above, the little drain mentioned in the next call may be located and can be followed to the top of the ridge by going a little west of south.  Here the calls end with the concluding phrase. "including all the land in that boundary up Jack's creek to said James Sizemore's line."  As stated *supra* the Sizemore line lies something near a mile to the east of this point.  A direct course from this point to the extreme southern point of the Sizemore line as claimed by appellees, would run north of Long and Short hollows and exclude almost half of the claimed Roark boundary. It is argued, however, that this phrase means for the boundary line to follow the spur of the ridge forming the watershed of the hollows named, which would carry it a distance of several miles; first south, then east, and then north until it reached the Sizemore conditional line.  If this construction could be assumed and the Sizemore line was then followed, the survey would end in space, with part of the eastern and all of the northern and a large part of the western boundary omitted.  Certainly no surveyor could locate any boundary by such a vague and indefinite description.  This being so, the recorded deed did not furnish notice of the extent of Roark's claim nor afford evidence thereof, and is insufficient to divest the

true owner of his lands, even though possession was maintained for more than the statutory period of limitation. It follows that the appellees failed to manifest title to this land, and the judgment should have been for the appellant except as to the extent of the interference enclosed in field No. 2. Appellees' claim to this seems never to have been surrendered and continued for perhaps thirty-five years, and as to it their title should be confirmed.

Wherefore, the case is reversed and cause remanded for proceedings consistent with this opinion.