## Culton v. Napier et al.
(Decided March 1, 1938.)

CLEON K. CALVERT and M. C. BEGLEY for appellant.

J. H. ASHER and JOHN L. DIXON for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This case has been wending its way leisurely back and forth through the courts for more than thirty years. This is its third trip to this court. Culton v. Couch, 230 Ky. 586, 20 S. W. (2d) 451; Culton v. Napier, 242 Ky. 683, 47 S. W. (2d) 519.

In 1895 the appellant, J. M. Culton, purchased from John Couch a one-half interest in 587 acres of land in Leslie county. He failed to lodge his deed for record until September, 1906. In the meantime, John Couch had sold and conveyed small portions of the 587-acre tract to the appellees Ballard Napier and Jack Napier and to H. C. Cornett, predecessor in title to the appellee Felix Napier, and to Thomas Johnson, appellee Johnnie Sizemore's predecessor in title. Ballard Napier purchased about 20 acres of the 587-acre tract from John Couch in 1899, and moved onto the land immediately. The deed to this land was executed by John Couch and wife in 1903, and was recorded April 13, 1903. In 1900 John Couch and wife conveyed a portion of the 587-acre tract to Jack Napier, who moved onto the land and has lived there continuously since then. The deed from John Couch and wife to H. C. Cornett was executed March 8, 1905. Later H. C. Cornett conveyed the land to appellee Felix Napier, but it appears that Napier took possession of the land in 1902 and has lived on it continuously since then under a contract of purchase from Cornett made before the latter obtained a deed from Couch. The deed from John Couch and wife to Thomas Johnson was executed February 26, 1903, and recorded on the same day. Johnson took possession of the land at once, and he and his successors in title have lived on it continuously since that time. It will be noted that all of these deeds were executed and most of them were recorded before J. M. Culton recorded his deed in September, 1906.

In December, 1906, J. M. Culton brought an action against John Couch and others for one-half of the value of certain timber he alleged had been sold and removed from the land without his consent after he purchased a one-half interest in 1895. He also asked for a division of the land. In 1908 George W. Bramlett filed an equity action against John Couch and J. M. Culton in which he sought to enforce an attachment lien on the 587-acre tract of land. The two actions were later consolidated.

The three Napiers and Johnnie Sizemore, who are the appellees on this appeal, were made defendants in the Bramlett suit, and they answered, alleging that they owned certain tracts which were included in the description of the 587 acres. Each made his answer a cross-petition against J. M. Culton. It is that phase of the case which is now before us. After the case had been to this court twice, additional proof was heard, and the circuit court adjudged that the appellees were the owners of the four small tracts claimed by them. Culton again appeals. He insists that neither of the appellees is an innocent purchaser for value without notice, and that the descriptions of the land in the deeds under which they claim are so indefinite as to render the deeds void for uncertainty.

That appellees paid Couch for their respective tracts is not denied. On the question of notice of appellant's ownership of a one-half interest in the land there is some conflict, but the great weight of the evidence is to the effect that neither of the appellees had notice of appellant's ownership at the time the purchase was made and the deed from Couch was executed. They all testified that the first notice they had of appellant's claim was when they were made parties to the Bramlett suit in 1908. Culton testified that he told some of the appellees before they purchased the land from Couch that he owned an interest in it, but this was denied by appellees. Several persons testified that it was generally known in the neighborhood before Culton recorded his deed that he owned an interest in the land, but others stated that they had never heard of his claim until after his deed was recorded and the litigation arose. The evidence was amply sufficient to sustain the chancellor's finding on the question of notice.

In the deed from John Couch and wife to Ballard Napier, the land conveyed to Napier is described as follows:.

"Lying and being on Big Creek waters of Red Bird and waters of one South Fork waters of Kentucky River. Beginning at the point above the branch at the point up the point to the top of the ridge at the head of the Branch; thence down the ridge opposite the little nob below Ballard house; thence crossing the creek and up the hill to the top of the said hill; thence up the ridge opposite

the lower end of Luther Garden Spot; thence up the creek to the beginning."

It is conceded that the land claimed by Ballard Napier is not on Big creek, but is on Bull creek, a branch of the Kentucky river. The description in the Napier deed is crude and somewhat vague and indefinite, but a number of witnesses testified that the boundary can be located from it. The ridges, points, and branches referred to are well-defined natural objects and are easily located. The garden spot referred to is the garden formerly owned by Luther Sizemore. In the judgment the Ballard Napier tract is described as being on Bull creek, and the names of the adjoining landowners are given and the boundary of the land is given as running with their respective lines. The evidence shows that the land described in the judgment is the same land described in the deed.

The description in the deed from John Couch and wife to H. C. Cornett, who sold to Felix Napier, is as follows:

"Lying and being in Leslie county, Kentucky, on Bull creek waters of the Middle Fork of the Kentucky river and bounded as follows: Beginning on Bull creek on a knoll in the line of Ballard Napier's land; thence with the said line to the top of the hill; thence down the point to Felix Napier's line; thence with Felix Napier's line to Tom Johnson's line; thence with Tom Johnson's line to John Davidson's line; thence with Davidson's line to the top of the ridge; thence with the top of the ridge around to Ballard Napier's line; thence Ballard Napier's line to the beginning."

It will be noted that this description is more definite than the description in the Ballard Napier deed. The descriptions in the Jack Napier deed and the deed under which Johnnie Sizemore claims are similar to the description in the Felix Napier deed.

Appellant relies upon Fordson Coal Co. v. Roark, 214 Ky. 247, 283 S. W. 106, in support of his contention that the descriptions in the deeds under which appellees claim are so indefinite as to render the deeds void. The deed in the Roark Case failed to describe completely more than one side of the land which it purported to convey. A deed is not void for indefiniteness

if the description of the land is sufficient to enable the lines to be located on the ground. In Virginia Iron, Coal & Coke Co. v. Combs, 186 Ky. 261, 216 S. W. 846, 847, the question as to the sufficiency of a description in a deed was presented, and the court said:

"The authorities agree that great liberality is allowed in the matter of description, and that terms and phraseology of the description will be interpreted with the view of upholding the deed if this can reasonably be done. 8 R. C. L. sec. 126, p. 1071. In such cases, we apply the maxim, 'Id certum est, quod reddi certum potest.' The test in every case is whether the land can be located from the description."

There is proof that the lines can be located on the ground from the descriptions in each of appellees' deeds. There is no evidence to the contrary.

The land in dispute has little value, and the appellees have been in possession of and lived on the respective tracts claimed by them for nearly forty years, and for more than thirty years appellant failed to press his claim. The appellees purchased and took possession of the land when they were young men. They raised their families there, and all four of them are well past the prime of life. When they were made defendants in the Bramlett suit, they promptly answered, setting up their respective claims to the land, and made their answer a cross-petition against appellant, who failed for nearly twenty years to file a response. The circuit court adjudged that the appellees had acquired title to the land in dispute by the deeds from John Couch and wife, but found further that aside from the deeds they had acquired title by adverse possession. In view of our conclusion that appellees' paper titles are good, it is unnecessary to consider the question of adverse possession. Surely it is for the best interest of all parties concerned that this litigation should cease.

The judgment is affirmed.