### GATLIFF COAL CO. et al. v. LAWSON et al.

Court of Appeals of Kentucky.

March 21, 1952.

Cleon K. Calvert, Pineville, T. E. Mahan, Glenn H. Stephens, Williamsburg, for appellants.

L. O. Siler, W. B. Early, Williamsburg, for appellees.

MOREMEN, Justice.

The appellees filed suit to quiet title to a 182 tract of land situate on Sang Branch on Bear Mountain, Whitley County. Many persons have attempted to appropriate this mountainous and remote land, and it has been the subject matter of several grants from the Commonwealth.

The first patents which contained a grant of the land here involved were issued to: (a) Carrington Jones in 1852; (b) Thomas E. Siler in 1856; and (c) Alfred L. Clapp in 1874. These are the senior patents and we are not concerned with any conflict between them, but we must decide whether appellants who claim through them have paramount title. The lands covered by these patents are adjacent and contiguous, and their boundaries encompass the 182 acre parcel.

Next came the junior patents and they were issued to: (a) Isham Lawson on December 1, 1882; and (b) Henry Gatliff on December 7, 1882. Henry Gatliff conveyed his interest to A. Gatliff and Joe Gatliff. The surveys which formed the basis for these junior patents purported to cover this same 182 acre tract and the inevitable law suit resulted. The record in that case (A. Gatliff et al v. Isham Lawson et al, Equity Action No. 109, Whitley Circuit Court, filed April 2, 1883) has been made a part of the record in this case, but we cannot assign to it the importance given it by appellees because Lawson won the case and appellants are no longer claiming through the patent issued to Henry Gatliff.

After A. Gatliff was defeated in his suit with Isham Lawson, he purchased the Clapp patent on August 24, 1889, and later bought the Jones patent and the Siler patent. The chain of title between A. Gatliff and appellants was established by the evidence, and they claim title to the Commonwealth only through the senior patents which were issued to Clapp, Jones and Siler.

Since both parties to this action claim possession to this tract of land—appellants claim possession through grants and deeds of bargain and sale, while appellees claim mainly through adverse possession—at the outset it is convenient to this opinion to define and separate the two meanings of this word, possession. Since the time of the Statute of Uses, where deeds of bargain and sale are employed, the deliverance of the deed transformed the use or trust created by the sale into possession. The ancient rites of feoffment by livery of seisin were no longer necessary. Our current statute, KRS 381.060(2), reads: "All deeds of bargain and sale, deeds to stand seized to use, deeds of release and deeds of trust, shall be held to vest the possession of the grantor in the grantee to the extent of the estate intended to be conveyed." Under the fiction created by statutory enactment we have possession by a vendee who may never even see the land. The other type of possession results from a physical relationship to the land itself and connotes a possessory interest resulting from proximity to and use of it. Thus, in cases involving the question of adverse possession of land, such as the instant case, both types of possession are presented and the same word (possession) has been used without distinction. We will accept terminology suggested by the American Law In-

stitute and call the possession resulting from physical relation with the land a possessory interest, and the other which results from legislative fiat, a nonpossessory interest. The Restatement of Law, Property, Vol. I, page 21.

Here, the appellees claim a possessory interest, but before this interest may crystallize into legal title, it must be tested by the requirements of the rule of adverse possession. In Fordson Coal Co. v. Roark, 214 Ky. 247, 283 S.W. 106, 108, this statement was approved: "In order to support a title by adverse holding, three facts must be established: First, the possession must have been continuous, actual, open, notorious, and peaceable for at least 15 years; second, the exterior boundary lines of the land so claimed must be well defined—i. e., either actually inclosed or so marked that the land is susceptible of being identified by its description; and, third, the possession must have been of such a character and extent as to exclude the idea that the right to possession was in any one else."

Appellees base their claim to title upon (a) nonpossessory interest obtained by the Isham Lawson patent, and (b) a possessory interest because of affinity with the land. It is necessary, therefore, to establish the value to appellees of the junior patent.

KRS 56.190 provides that every patent is void insofar as it embraces land previously patented. This statute or one of similar meaning has been in effect for many years. In Warfield Natural Gas Co. v. Danks, 271 Ky. 452, 112 S.W.2d 674, 675, we stated: "A junior patent issued since 1835 is void and no title can, therefore, be acquired under it." However, even though we have held such patents void, we have not held them to be valueless. Value is imputed to them in contests between a person who has a possessory interest and a person who has a nonpossessory interest because he holds the fee by reason of a "paper title." This value results from its adaptability to use as evidence or proof of claim. In Shutt v. Methodist Episcopal Church, 187 Ky. 350, 218 S.W. 1020, 1021, it was said: "Generally speaking, any in-

strument, however defective or imperfect, and no matter from what cause invalid, purporting to convey the land and showing the extent of the tenant's claim, may be 'color of title'; and a claim to the land thereunder will draw to the claimant the protection of the statute of limitations, the other requisites of adverse possession being present."

But "color of title" is not a requisite of adverse possession. We have held that where the physical possession is sufficient, color of title is not necessary. Rice v. Blair, 161 Ky. 280, 170 S.W. 657; Le Moyne v. Hays, 145 Ky. 415, 140 S.W. 552; and Kentucky Coal & Timber Development Co. v. Carroll Hardwood Lumber Co., 154 Ky. 523, 157 S.W. 1109. Judge O'Rear neatly summed up the uses of "color of title" in New Domain Oil & Gas Co. v. Gaffney Oil Co., 134 Ky. 792, 121 S.W. 699, 701, when he said: "So, where one has a deed, but not from the true title holder, yet enters under it, claiming adversely, his deed is admitted as evidence, not of title, but of extent of possession".

A potential disseisor who enters under bare color of title is no better off than one who enters without color and marks a distinct line around that which he intends to occupy. Each, if he acquires any rights, must receive them because of the nature of his dominion over the land for the statutory period. Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394.

The "extent of possession" referred to in the New Domain Oil & Gas Co. case does not mean mere mental intention by claimant to occupy the entire boundary described in the instrument. In Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S.W. 130, 135, this observation was made: "The adverse possession necessary to create title does not consist of mental conclusions or intentions, but it must have for its basis the existence of physical facts, such as making an improvement upon the land, or doing other acts upon it, as will openly evince a purpose to hold a dominion over it in hostility to the title of the real owner, and such as will give notice to the real

owner that the purpose is to hold it in hostility to his title. This adverse holding must continue for the statutory period of 15 years."

 This record does not disclose such acts of entry and dominance to prove hostility, of legal sufficiency, to the true owners. Acts of dominion, which appellees introduced evidence to prove, may be divided into six classes. It was shown that:

(1) George L. Bennett, who is a relative by marriage, assumed a possessory interest in a small tract of land (no more than 3½ acres) by permission of some of the Lawson family. This was no more than an overflow or encroachment from the Daniel Powers' patent which borders on the northerly part of the property, and which appellees' ancestors owned and occupied to some extent. Appellants concede that they have been disseised of this acreage.

(2) Predecessors of appellees built a small house on the land in about 1886, but the evidence is not clear as to how long the house existed. There is no trace of it now.

(3) At one time a fence existed on the northeastern boundary. This too has disappeared.

(4) Occasionally trees were cut for the purpose of sale; making house patterns and coffins. But we have held that trespass upon unenclosed land to cut timber does not constitute an adverse holding even though the acts continue sporadically for the prescriptive period. Marsee v. Colson, 307 Ky. 328, 210 S.W.2d 952.

(5) Taxes were paid. This act is disputed but, in any event, we have held that payment of taxes in itself is not sufficient. Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S.W.2d 1075.

(6) A hog lot is now maintained. The proof is not clear as to the nature of this establishment, and the proof of it adds nothing to the contention that appellees and their predecessors have dominated the land to the extent of the boundaries of the Isham Lawson patent.

A spate of testimony was released in an attempt to establish possessory interest sufficient to ripen into legal title, but, with the exception of the encroachment by George L. Bennett from another patent, we find only instances of minor trespass not sufficient to establish interest in unenclosed land. Harmon v. Lowe, 310 Ky. 60, 219 S.W.2d 982.

Appellees contend that the purchase of a senior patent in 1889, after the suit had been concluded between A. Gatliff and his brother and Isham Lawson over the validity of the junior patents, was champertous and void because he knew that a house on the land (referred to above) was being occupied by a tenant of Isham Lawson. Reliance is had upon Bowling's Heirs v. Roark, 24 S.W. 4, 15 Ky. Law Rep. 499. In that case the court took note of the fact that the boundary was known and fixed and all of the witnesses spoke of its location as though it was an undisputed fact. Twenty acres were cleared and under fence. The physical relationship to the land was such that possessory interest had been established. We have pointed out above that appellees have failed to show that type of possession by domination to fixed boundaries.

 It must be remarked that appellees were plaintiffs in the Circuit Court and sought affirmatively to establish title to the land. The plea of champerty is available to a party only in defense of a claim. Royse v. Kentucky Female Orphan School, 313 Ky. 428, 231 S.W.2d 704, and Thurman v. Doss, 312 Ky. 603, 229 S.W.2d 317, where it was written: "Appellees plead champerty, but the champerty statute is for defense only, and cannot be used as an offensive weapon against the possessor."

Therefore, the judgment is reversed.