**NEWMAN v. SHARP et al.**

Court of Appeals of Kentucky.

April 25, 1952.

Walter B. Early, T. E. Mahan, Williamsburg, for appellant.

Glenn H. Stephens, C. B. Upton, Williamsburg, for appellees.

MOREMEN, Justice.

Appellees, trustees of the Church of God at Goldbug, filed suit to quiet title to a parcel of land. By an amended petition they asked that appellant be ejected from their property. Appellant, by answer and counterclaim, set up the source of his title and alleged that the land was owned by him by virtue of paper title and he also claimed title by reason of adverse possession by him and his predecessors in title. After testimony was introduced in behalf of both parties the court submitted the case to a jury who found that the title was in

appellees and judgment was entered on that verdict. Appellant insists that the court should have determined as a matter of law that he was the owner.

Both parties claim by mesne conveyance to J. B. Bowlin, a common grantor, who, in April 1898, sold a tract of land to the trustees of the Congregational Church which tract is now owned by appellees by virtue of a deed executed November 14, 1911. In September 1899, Bowlin conveyed the parcel now owned by appellant and in that deed the easterly line was described as running with the line of the church property. Through several conveyances that followed, the deeds called for the church line. When this tract (which we will call the farm tract) was sold in 1940, it was surveyed and the boundaries described by courses and distances. It was so described when purchased by appellant, H. J. Newman, in 1944. The true location of the westerly church line, which is the dividing line between the church property and the farm property, is of importance. The original description of the church property, as set out in the petition, is as follows:

"Beginning at a stone at the county road leading from Goldbug to Nicholson Ford and running northwest 200 feet to a sweet gum at the side of the road leading to the Pfoff Mill Ford thence southwest 200 feet with said road to a white oak, thence east 200 feet to a black gum on the said road leading to Prewitt's Bend, thence north 300 feet to the beginning."

■ This description when projected on paper assumes an area in shape of a trapezium. As laid out on a map made by Hugh P. Finley, surveyor, and introduced by appellees, it has the appearance of a wedge from which a portion of the apex has been removed. However, this map resulted from a survey made after the petition had been filed and the surveyor who made it testified that he began at a point suggested to him by one of the appellees and he ran his courses and distances from that point. The first call begins at a stone at the county road and runs for a distance of 200 feet. In the corrected description

the distance was shortened 113 feet; to the next call was added 70 feet; from the third call was subtracted 13.5 feet; and from the last call was subtracted 37.93 feet. It is true that three of the calls are to roads and it has long been a rule of this court to give preference to courses over distances but in doing so the errors in distances must be reasonable and should be apportioned to all of the lost lines. Cornett v. Kentucky River Coal Co., 175 Ky. 718, 195 S.W. 149. However, the natural objects from which the lines may be located on the ground should be well defined. Culton v. Napier, 272 Ky. 384, 114 S.W. 2d 480.

The first call, above stated, is for the county road leading from Goldbug to Nicholson Ford. The next call is in the general direction of the land owned by appellant and unless the true location of the line which adjoins that county road is determined, it is impossible with accuracy to determine the dividing line between the two properties. If the true location of the county road called for could be determined, it would be easy to fix the second line because it is coincident with the line of an established road.

■ The record discloses that about 20 years ago a new road was constructed which is State Highway 25–W connecting Corbin and Williamsburg and this road was placed in a westerly direction from the old road and probably over property which belonged to the church. The right-of-way extends some 20 feet beyond the surveyed portion of the road and, from all the testimony introduced, it seems certain that now the short line (of the trapezium) has been moved in a westerly direction so that the broad base of the wedge has overlapped the land belonging to appellant. When appellees' surveyor began his work before he testified, he did not find the old county road. He merely accepted some black gum sprouts, which were pointed out to him by interested parties, as being the black gum referred to in the description and from this point, which is at the base of the wedge, he measured the tract of land, lengthening or shortening the line so that the ground which appellees were claiming came within

the limits of his boundary. The important monument in the description was the beginning point in the old county road which was in an easterly direction from the new road, yet the property shown on the map and claimed by appellees stops 20 feet west of the metal portion of Highway 25–W. It was shown that this road itself was laid west of the old county road. We are of opinion that appellees failed entirely to locate upon the ground the property described in their deed.

The foregoing determination is strengthened by the fact that an old wire fence, in a bad state of repair, is now in existence about 20 feet behind the church building which is on the property. Appellant states that this wire fence marks the true division line. The proof shows that shortly after Bowlin made his first conveyance a rail fence was erected along this line. In time this fence was replaced by a wire fence which is the dilapidated one referred to above. In places where it was nailed to trees, the wires have now become covered by the trees' growth, but the fence has stood as a mark and as notice to the owners for over 50 years, that this was the division line between the properties. It was shown that one of the early owners, L. J. Steely, who bought the farm property in 1900 cultivated the land up to the fence. He sold the land in 1921 to W. C. Croley. This man was introduced as a witness in behalf of appellees and stated that he claimed to the church property, but intimated that he did not claim the disputed area as being his own. But during his tenure the fence was not removed and the church did not exercise any dominion over the strip. In fact the church has never exercised ownership over this disputed area. In 1930 Croley sold the farm property to Harrison Foley and the proof is certain that since that date all of the owners have claimed up to the fence line. It seems to us to be of little importance whether or not Croley claimed this land as his own. The full period of the statute has run since the date of his conveyance to Harrison Foley during which time the fence stood as it had for 50 years.

In Lewallen v. Mays, 265 Ky. 1, 95 S.W. 2d 1125, 1129, it was stated:

"Land claimed to a well-defined boundary such as a fence, as in this case, if the possession thereof is open, notorious, adverse, and continuous for a period of 15 years or more, such possession is sufficient to sustain the claim of title by adverse possession."

In the case at bar, the fence had stood for 50 years. The church and its predecessors made no attempt to have the fence removed nor indicated by any definite action until the institution of this suit that claim was being made to property lying beyond the fence. On the other hand, with the exception of a few years when the land was owned by W. C. Croley, the possession by the farm owners to the fence was adverse and notorious by each owner.

A similar situation was presented in Garthwaite v. Harges, 301 Ky. 653, 192 S.W.2d 734, in which a person purchased a fenced land believing the property extended to the fence. The court said:

"This contention we deem to be without merit, because the testimony for the appellees showed that Mrs. Harges' mother thought she was purchasing a lot which extended back to the line fence; and that she at all times claimed to that line and that her tenants had used the strip. Certainly they would not be bound by the original permissive entry of Fred Ziegler."

We are of opinion that the trial court should have decided as a matter of law that the property up to the fence belonged to appellant and the judgment is therefore reversed for proceedings in conformity to this opinion.