**Jonah HALL et al., Appellants,**

v.

**Lee KING et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 15, 1957.

Clark Pratt, Hindman, for appellants.

Joe Hobson, Prestonsburg, Cordell H. Martin, Hindman, for appellees.

SIMS, Judge.

Jonah Hall and wife Anna and their lessees of coal rights, Clarence and Felix King, in 1949 brought this action against Lee King and wife Angeline and C. B. Bates to quiet title to a tract of land (the number of acres not given) located in Knott County, described by calls and "known as Lot No. 6 in the Widow Bates' dower of John W. Bates." Also they sought to recover $54,000 for coal they alleged defendants mined from plaintiffs' land; further, plaintiffs sought to enjoin defendants from trespassing upon their property. Willie J. Bates filed an intervening petition claiming "an interest in the minerals" in Lot No. 4, herein after mentioned, and asked for an accounting for the coal Lee King mined therefrom. The answer as amended denied defendants had mined coal from plaintiffs' land or from the land of intervenor.

Some 600 pages of testimony were taken by depositions and upon final submission the trial judge dismissed the petition and dismissed without prejudice the intervening petition because "the division of Lot 4 the Court found to be too indefinite to make a decision thereon and further finds that he is unable to ascertain where any coal has been mined from that part of Lot 4 owned or claimed to be owned by intervenor." Reference will be made to Lot 4 later in the opinion. The intervenor, Willie J. Bates, appealed, as did the Halls, but the lessees of the Halls, Clarence and Felix King, have not appealed.

This entire controversy is ended when the boundary line between Lots 6 and 4 is located. Plaintiffs own Lot 6 and defendants own Lot 4, the latter being north of the former with a common east-west boundary. It may be helpful in understanding this case to give a brief history of the land in dispute. At the outset we must state that no acreage is given of the tract out of which the parcels in controversy were carved, nor does the acreage of the parcels themselves appear in the record. The descriptions in the deeds are not by metes or bounds, but by calls to natural objects of the most indefinite location and without the distances between these natural objects being given.

John Bates died in 1889 leaving a widow, Elizabeth, and thirteen children. Patently, a dower tract was allotted to the widow who died in 1902 and same was partitioned among her children or their heirs. Lot 6 was conveyed by the commissioner to two children of James Bates, who died before his widowed mother, and by mesne conveyances this lot was conveyed to plaintiffs Jonah and Anna Hall, who leased the coal therein to the other plaintiffs, Clarence and Felix King. Lot 4 was conveyed by the commissioner to the eight children of Eliza Johnson, who died before her mother, and subsequently acquired by A. W. Amburgey and T. G. Bates, who partitioned it in 1915. Bates obtained the north half and Amburgey the south half. T. G. Bates conveyed his north half to C. B. Bates, and there is some question as to whether the deed excepted the minerals and whether the miner-

als were conveyed by T. G. Bates to Willie J. Bates. C. B. Bates also acquired the south half of Lot 4. Lee King was conveyed the coal in the south half of Lot 4 by C. B. Bates, as well as by Ellis Bates and Everage King.

As just above stated, the southern boundary line of Lot 4 is the northern boundary line of Lot 6. Lying to the east of these two lots is Lot 5 (not involved in this controversy), which corners with Lots 6 and 4.

In 1948 Lee King opened a mine on Lot 4. Plaintiffs contend that Lee King willfully ran his mine under Lot 6 and took therefrom 16,000 tons of coal belonging to Clarence and Felix King, which was worth in round numbers $48,000. And the royalty therein belonged to the Halls and was worth $6,400.

The deeds executed by the commissioner in partitioning the dower tract in 1902 gave this description of these two lots:

"Lot 6. Beginning at the mouth of a drean at on the west side of Beaver Creek on the line of lot No. 4 and corner of lot No. 5, thence runs North 78 East to a sycamore at the mouth of the deep gut hollow, thence up said hollow to a beech, thence up the point to the top thence south 78 West by a beech and cross the creek to a lynn to the back line of Elizabeth Bates dowery, thence with said dowery line to the corner of lot No. 4, thence with the line of lot No. 4 down a drean to the beginning."

"Lot 4. Beginning at the mouth of a drain on the west side of Beaver Creek on the line of lot No. 3; thence with said line of lot across the creek in an eastern course to the top of the point; thence down the point to a creek near the mouth of a deep gut hollow thence south 78 west by a willow to the back line of Elizabeth Bates dowery, thence with said line of dowery in a north course to the corner of lot No. 3; thence with the line of lot No. 3 to the beginning."

Plaintiffs insist the descriptions of these two lots in the deeds of the commissioner are so indefinite that surveyors cannot run them, and their surveyors so testified. Plaintiffs' surveyors, instead of using the above descriptions taken from the commissioner's deed of 1902 in trying to locate the boundary line between these two lots, used the descriptions appearing in subsequent mineral deeds and surveys. T. A. Combs, surveyor for defendants, testified these mineral deeds do not close.

The real subject of dispute between the litigants is the location of the drain mentioned in the commissioner's deed to Lot 6. Both sides admit that a line running North 78 East will not come close to coinciding with a drain now emptying into the west side of Beaver Creek opposite the mouth of Steep Gut Hollow. Appellants argue that since this is so and since C. B. Bates' deed for the south portion of Lot 4 calls for a line N 81 W, which does coincide with the drain, that is their line. If this N 81 W line is the east-west boundary between Lots 6 and 4, then appellants own most of the mine Lee King opened on Lot 4.

The weakness in appellants' argument is that if an old landmark cannot be located, the court will ignore it in fixing a boundary. Newman v. Sharp, Ky., 248 S.W.2d 413; Burchett v. Howell, Ky., 309 S.W.2d 38. It will be noticed this drain was not mentioned in the commissioner's deed in describing Lot 4. Furthermore, the channel of the creek has changed considerably since the commissioner's deeds, as well as the mineral deeds, were drawn. As we read this voluminous record, no one knows exactly at what point this drain entered the creek when the commissioner's deeds were drawn in 1902, or when the mineral deeds were drawn.

There is much conflict in the evidence. Plaintiffs' surveyors testified the descrip-

tions in the commissioner's deeds to these lots cannot be surveyed, while defendants' surveyors testified they can. C. B. Bates, a former county judge who is now about 76 years of age and who along with his father's other heirs received Lot 8, testified the lines as surveyed by defendants' engineers are correct. He built a fence almost in the drain so as to attach it to trees, but no effort was made to put it on the line as the land was not tillable. Appellants' testimony shows these lots were fenced in part while appellees' testimony shows otherwise. No adverse possession was claimed by either side. We quote from the trial judge's opinion:

"The Court finds considerable conflict in the expert testimony regarding the true and correct line between Lots 4 and 6 of the division among the heirs of John and Elizabeth Bates established in 1902 by the commissioners of this Court.

"The commissioners deed of 1902 respecting Lot 3 and that of Lot 4 appear to the Court to contain descriptions adaptable to easy ascertainment by a competent surveyor. Lot 6's description is very vague and difficult to follow. However, the commissioner's deed as to lot 6 used the southern boundary of lot 4 and that being so, the Court is constrained to rule that running from the Elizabeth Bates Dower line, the dividing line between lot 4 and 6 is a line running N 78 E to the location of a twin sycamore indicated on the T. A. Combs Exhibit 31, near Kentucky 7 highway."

It will be noted the dividing line N 78 E between Lots 4 and 6 as established by the trial judge is the dividing line called for in the original deeds by the commissioner for these two lots.

■ This is a fact case and under the conflicting evidence appearing in the record we cannot say the trial judge's finding is erroneous. Certainly we cannot say it is clearly erroneous, which we would have to do under CR 52.01 to reverse the judgment. The judgment is affirmed.